Filed 7/16/26  Johnson v. Khan CA1/2
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| CORNELL JOHNSON,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>MOHAMMED AKBAR KHAN,<br><br>        Defendant and Respondent. | A174093<br><br>(Solano County<br>Super. Ct. No. FCS059193) |

Defendant/respondent Mohammed Akbar Khan owned a property that in 2012 he rented to Kelvin Hicks, Sr., who at some point in his tenancy installed a fence with a gate.  In October 2021, plaintiff/appellant Cornell Johnson was walking with his dog in the vicinity of the property when he was bitten by one of two dogs that had escaped from the property, and sued Hicks and Khan alleging, "negligent maintenance and design of the gate and fencing, as well as negligent supervision of the dogs."  Khan moved for summary judgment on the basis that he had no knowledge that the dogs were dangerous and no notice of any dangerous condition involving the fence or gate.  The trial court granted the motion and entered judgment for Khan.  Johnson appeals.  We affirm.

1

# BACKGROUND

## The Facts

In 1988, Khan acquired a property located on School Street in Suisun City (the property), and in 2012 leased the property to Kelvin Hicks, Sr. As noted, at some point during his tenancy, Hicks put a fence and gate on the property.

On October 25, 2021, Johnson was walking with his dog across the street from the property when he saw two dogs exit the property through a gate and come towards him and his dog. The larger of the two dogs, a pitbull, came towards him, jumped and latched onto Johnson's hand. The smaller dog attacked Johnson's dog.

## The Proceedings Below

On October 25, 2022, Johnson filed a complaint naming three defendants, Hicks, his son, Kevin Hicks, Jr., and Khan. It alleged one cause of action, for negligence, alleging as follows: the Hicks' defendants leased the property; they "owned two dogs, one of them a pit bull, that harmed Plaintiff. Defendant Hicks and others failed to secure the dogs. The dogs, especially the pit bull, were known to be viscous [*sic*] and dangerous dogs by both Hicks Defendants and Akbar. Due to the negligent maintenance and design of the gate and fencing, as well as negligent supervision of the dogs, on October 25, 2021 the dogs escaped from [the property and] . . . attacked and seriously maimed and injured Plaintiff . . . ."

On October 17, 2024, Khan moved for summary judgment. His moving papers included a memorandum of points and authorities; a 15-page separate statement listing 37 undisputed material facts (hereafter, "Facts"); and voluminous documentary evidence. As pertinent, Khan's separate statement contained facts supporting that he: (1) had no actual knowledge that the dog

2

that bit Johnson was dangerous (Facts 23 to 34), and (2) had no notice of any dangerous condition involving the gate or fence in the front yard (Facts 35 to 37).

Concerning Khan's knowledge about the dogs, Johnson's response to Khan's separate statement asserted that he disputed Facts 24 to 34, but the cited bases for such disputes did not demonstrate any actual knowledge of any dangerous propensity of any dog, only that Khan knew dogs were present on the property. Four examples should suffice, Khan's Facts numbered 24, 25, 26, and 27, and Johnson's responses:

| "Undisputed Material Facts & Supporting Evidence [¶] . . . [¶] | Opposing Party's Response & Supporting Evidence [¶] . . . [¶] |
| --- | --- |
| "24. During the time the subject property was leased to Defendant Hicks, including the time of the subject incident, Defendant Mohammed Akbar Khan had no actual knowledge of any dangerous propensities of the dog that allegedly bit Plaintiff. [¶] . . . [¶] | Disputed. Khan had sufficient evidence that dogs were present and failed to act; dangerous propensities can be inferred from conduct and circumstances, not just prior bites. The property had 3 pit bulls residing there. Further, when Khan said Hicks could not have them there, Hicks stated the dogs were there for the protection of his children because Hicks was often not at home. [¶] . . . [¶] |
| "25. Defendant Hicks's dogs never bit anyone, have no history of biting anyone, and are very friendly with | Disputed. Hicks's testimony about dogs being friendly is self-serving and contradicted by the attack. [¶] . . |

3

people and not mean dogs. [¶] . . . [¶]  . [¶]

| | |
|---|---|
| "27. While there was a neighbor complaining about one of Defendant Hicks's dog barking too much, Defendant Hicks never had any incidents where his dogs showed any aggression towards anyone.  [¶] . . . [¶] | Disputed.  Lack of prior complaints or knowledge does not negate Khan's liability for known present dangers and his failure to act. [¶] . . . [¶] |
| "28. As far as Defendant Hicks is aware, Defendant Khan never received any information about complaints against Defendant Hicks's dogs. . . . | Disputed.  Lack of prior complaints or knowledge does not negate Khan's liability for known present dangers and his failure to act." |

Johnson's opposition also included additional "evidence in opposition," which consisted of 16 items.  This evidence included that Khan would visit the property to collect rent; that the Hickses obtained permission from Khan to build a fence in the front yard that had a gate that did not shut automatically and had to be manually latched; that Khan inspected and approved the fence; and that Khan had seen dogs at the property before. These additional facts did not include evidence that Khan had actual knowledge the dogs were dangerous or that he had notice that any dogs had ever escaped out of the front yard in the past.[1]

Following Khan's reply, the motion came on for hearing on May 27,

---

[1]     Johnson did cite that on one or two occasions the police had come to the property following complaints about dogs, but the complaints were not about dangerousness but rather because the dogs were barking.

2025, prior to which the court had issued a tentative ruling granting the motion. The court heard argument, took a recess to review some material, and heard additional argument, at the conclusion of which it took the motion under submission.

On June 3, the trial court filed its order granting the motion, and on July 31, entered judgment for Khan. That same day Johnson filed a notice of appeal.

## DISCUSSION

### Summary Judgment and the Standard of Review

"A party may move for summary judgment in an action or proceeding if it is contended that the action has no merit . . . ." (Code Civ. Proc., § 437c, subd. (a)(1) (section 437c).) And summary judgment will be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Section 437c, subd. (c).)

A defendant "moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) And to prevail, a defendant must show that one or more elements of the challenged cause of action cannot be established or that there is a complete defense to it. (*Id.* at p. 849; *Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476–477.)

Our review is under well-settled principles: "On appeal '[w]e review a grant of summary judgment de novo; we must decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. [Citations.]' (*Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348.) Put another way, we exercise our independent

5

judgment, and decide whether undisputed facts have been established that negate plaintiff's claims. (*Romano v. Rockwell Internat., Inc.,* [(1996)] 14 Cal.4th [479,] 487.) As we put it in *Fisherman's Wharf Bay Cruise Corp. v. Superior Court* (2003) 114 Cal.App.4th 309, 320: '[W]e exercise an independent review to determine if the defendant moving for summary judgment met its burden of establishing a complete defense or of negating each of the plaintiff's theories and establishing that the action was without merit.' (Accord, *Certain Underwriters at Lloyd's of London v. Superior Court* (2001) 24 Cal.4th 945, 972.)

"But other principles guide us as well, including that '[w]e accept as true the facts . . . in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn from them.' (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 67.) And we must ' "view the evidence in the light most favorable to plaintiff[] as the losing part[y]" and "liberally construe plaintiff['s] evidentiary submissions and strictly scrutinize defendant['s] own evidence, in order to resolve any evidentiary doubts or ambiguities in plaintiff['s] favor." ' (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 96–97.)" (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 253–254.)

### Some General Principles Involving Landlord Liability to Third Parties

" 'Under California law, a landlord who does not have actual knowledge of a tenant's dog's vicious nature cannot be held liable when the dog attacks a third person.' " (*Fraser v. Farvid* (2024) 99 Cal.App.5th 760, 763, quoting *Donchin v. Guerrero* (1995) 34 Cal.App.4th 1832, 1838 (*Donchin*).) The reason is that " '[w]ithout knowledge of a dog's propensities a landlord will not be able to foresee the animal poses a danger and thus will not have a duty to take measures to prevent the attack.' " (*Ibid.*) While the " 'actual

6

knowledge rule' can be satisfied 'by circumstantial evidence the landlord *must* have known about the dog's dangerousness as well as direct evidence [that] he *actually* knew' " (*ibid.*), an inference based on circumstantial evidence "must reflect the landlord's actual knowledge and not merely constructive knowledge or notice." (*Donchin*, *supra*, 34 Cal.App.4th at p. 1839.)

As one court put it over 50 years ago, in a case described as presenting "a question of first impression": "We hold that a duty of care arises when the landlord has actual knowledge of the presence of the dangerous animal and when he has the right to remove the animal by retaking possession of the premises" (*Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 507 (*Uccello*)), the court going on to describe the law this way: "It should be emphasized that a duty of care may not be imposed on a landlord without proof that he knew of the dog and its dangerous propensities. Because the harboring of pets is such an important part of our way of life and because the exclusive possession of rented premises normally is vested in the tenant, we believe that *actual* knowledge and not mere constructive knowledge is required. For this reason we hold that a landlord is under no duty to inspect the premises for the purpose of discovering the existence of a tenant's dangerous animal; only when the landlord has actual knowledge of the animal, coupled with the right to have it removed from the premises, does a duty of care arise." (*Uccello*, *supra*, 44 Cal.App.3d at p. 514, fn. omitted.)

As to the law regarding a landlord's liability for changes made to the property by the tenant during the tenancy—the situation here involving the fence and the gate—it is this:

"Public policy precludes landlord liability for a dangerous condition on the premises which came into existence after possession has passed to a

7

tenant. [Citation.] This is based on the principle that the landlord has surrendered possession and control of the land to the tenant and has no right even to enter without permission. [Citation.] It would not be reasonable to hold a lessor liable if the lessor did not have the power, opportunity, and ability to eliminate the dangerous condition. [Citation.]

" '[W]here a landlord has relinquished control of property to a tenant, a "bright line" rule has developed to moderate the landlord's duty of care owed to a third party injured on the property as compared with the tenant who enjoys possession and control. " 'Because a landlord has relinquished possessory interest in the land, his or her duty of care to third parties injured on the land is attenuated as compared with the tenant who enjoys possession and control. Thus, before liability may be thrust on a landlord for a third party's injury due to a dangerous condition on the land, the plaintiff must show that the landlord had actual knowledge of the dangerous condition in question, plus the right and ability to cure the condition.' " ' " (*Garcia v. Holt* (2015) 242 Cal.App.4th 600, 604–605 (*Garcia*); see generally *St. John v. Schaeffler* (2025) 109 Cal.App.5th 1146, 1158–1159.)

Applying these principles here leads easily to the conclusion that the summary judgment was proper.

**The Summary Judgment Was Correct: Johnson Has Shown No Error**

*Introduction*

Johnson's opening brief is 13-pages long, only five pages of which are argument. They are pages 9 to 13 that contain four arguments, identified as "B" through "E,"[2] as follows: "B. Respondent Owes a Duty of Care to Persons On Or Off The Property"; "C. Respondent Breached His Duty Of Care By

---

[2] Argument "A" states that our review is de novo.

8

Permitting a Dangerously Designed and Installed Front Yard Fence"; "D. The Trial Court Erred In Granting Respondent's Motion for Summary Judgment Relating to Allegations of General Negligence that Were Not Raised in His Moving Papers"; and "E. There Is a Dispute Of Material Fact As to Whether Respondent Must Have Known That Three Large Dogs Had a Nature or Tendency to Be Dangerous."

### *The Law Requires Actual Notice; Johnson Has Shown No Triable Issue of Material Fact of Such Notice*

*Fraser*, *supra*, 99 Cal.App.5th 760, with facts strikingly similar to those here, is persuasive. This is how the opinion begins.

"Plaintiff Joni Fraser was attacked by two pit bulls who escaped from a single-family residence their owner, Hebe Crocker (Ms. Crocker or tenant), leased from Ali Farvid and Lilyana Amezcua (defendants or landlords). Plaintiff sued Ms. Crocker and defendants. Plaintiff settled with Ms. Crocker. A jury found plaintiff proved that defendants had actual knowledge of the dangerous propensity of Ms. Crocker's dogs and could have prevented foreseeable harm to plaintiff. The jury found plaintiff suffered damages of more than $600,000.

"The trial court granted defendants' motion for judgment notwithstanding the verdict (JNOV), finding no substantial evidence was produced at trial demonstrating defendants' knowledge of the dogs' dangerous propensities.

"Our review of the record confirms the trial court's ruling was correct. We therefore affirm the judgment for defendants." (*Fraser*, *supra*, 99 Cal.App.5th at p. 762.)

Doing so, the court discussed at length the evidence at trial, which included an email from a neighbor to the property advising the landlord that " '2 guard dogs' " were on the property, and also the trial court's granting the

9

JNOV:

"In its ruling on defendants' JNOV motion, the trial court found there was 'an absence of any evidence that Defendants Farvid and Amezcua had actual knowledge that Ms. Crocker's dogs were dangerous and vicious prior to the incident involving Plaintiff.' The court reviewed the evidence, observing (for example) that: Mr. Platt testified he never informed defendants the dogs were dangerous, and his main concern was the condition of the house and yard that might affect property values. Ms. Ramos-Platt acknowledged she never saw the dogs being aggressive or vicious and never told either defendant they were aggressive or vicious. The court described testimony from several other witnesses, none of whom provided any evidence defendants knew or must have known the dogs were dangerous before the August 2018 attack. (This included testimony from the animal control officer who investigated the attack and found no prior incidents involving the dogs.)

"As for the May 2017 e-mail from Ms. Ramos-Platt mentioning 'the 2 guard dogs,' the court stated: 'In fact, the "guard dog" comment says nothing to warn anyone about these dogs' dangerous propensities but has been used by Plaintiff's counsel to suggest that this comment, not remembered by Ms. Amezcua, is compelling proof that both Mr. Farvid and Ms. Amezcua had knowledge of the dangerous and vicious propensities of the two dogs.' The court found the comment lacked 'sufficient substantiality' to support a finding that defendants knew the dogs had dangerous propensities. The court concluded:

" '[T]he fact that the words "guard dog" [were] contained in a lengthy email, albeit in a positive light, constitutes no evidence that Defendants had knowledge of Ms. Crocker's dogs' dangerous propensities. The colloquial use of the term "guard dogs" was used by Ms. [Ramos-]Platt in a positive light

10

and not as a warning, in no way put the Defendant landlords on notice as to dangerous propensities, as compared to a commercial setting when guard dogs are likely trained to protect through intimidation the property they are guarding.' " (*Fraser*, *supra*, 99 Cal.App.5th at p. 768.)

And so the Court of Appeal held: "As already mentioned, to establish a landlord's liability, the plaintiff must present either direct evidence the landlord actually knew about the dog's dangerousness or circumstantial evidence that the landlord must have known. (*Donchin*, *supra*, 34 Cal.App.4th at p. 1838; see *Uccello*[, *supra*,] 44 Cal.App.3d [at p. ]514, fn. 4 . . . ['A]ctual knowledge can be inferred from the circumstances only if, in the light of the evidence, such inference is not based on speculation or conjecture. Only where the circumstances are such that the defendant "must have known" and not "should have known" will an inference of actual knowledge be permitted.'].) [¶] We agree with the trial court that there is neither direct nor circumstantial evidence that defendants knew or must have known Ms. Crocker's dogs were dangerous." (*Fraser*, *supra*, 99 Cal.App.5th at p. 769.)

Likewise here.

As shown above, there was no evidence that Khan had actual knowledge that any of the dogs was dangerous.[3] Moreover, Johnson offered no evidence that Khan had any notice of any dangerous condition involving the gate or fence in the front yard, including any notice that the dogs had

---

[3]    In response to Fact 10, Johnson pointed to Hicks's deposition transcript to show that he kept three dogs on the date of the subject incident. Hicks also admitted that whenever Khan visited, he, Hicks, would tell the dogs to be quiet, and further testified that once Khan saw "the dogs" in the front yard without saying how many—and that Khan asked him to "get rid of them." At best, this is evidence of knowledge of "the dogs" but not knowledge that any dog was dangerous.

11

ever escaped through the gate or fence before the subject incident. There was no dispute that the property was leased to Hicks in 2012, or that Hicks put up the fence and gate, or that Hicks was never aware of any problems with the gate or fence. And there was no dispute that Khan never received any complaints about the dogs. This, of course, includes the absence of evidence of notice about the dogs escaping through the fence or gate before the date of the subject incident.

*Lundy v. California Realty* (1981) 170 Cal.App.3d 813 (*Lundy*) is also instructive. There, the landlord had knowledge that the tenant was going to keep a German shepherd dog named Thunder on the unfenced premises rented to her. (*Id.* at p. 821.) A cable television field engineer who was on the property was attacked by Thunder, and sued the landlord. The trial court granted summary judgment and the Court of Appeal affirmed, holding that to impose liability on someone other than the dog's owner, " ' "*previous knowledge of the dog's vicious nature must appear.*' " " (*Ibid.*)

There, Lundy argued, similar to what Johnson here infers, that "anyone knows that a 100 pound German shepherd is going to chase and attack any stranger coming on the property unless restrained." (*Lundy*, *supra*, 170 Cal.App.3d at pp. 821–822.) The court explained that on the issue of actual knowledge, judicial notice cannot be taken that all dogs of a certain breed of size are dangerous. (*Id.* at p. 822.) Nor can actual knowledge of dangerous propensity be inferred from knowing the dog's name was "Thunder." (*Ibid.*)

Similarly—and on point here—it would be improper to take judicial notice that all male pitbulls are dangerous. (*Yuzon v. Collins* (2004) 116 Cal.App.4th 149, 168 ["just as it is improper to take judicial notice that all German shepherds are dangerous (*Lundy*[, *supra*,] 170 Cal.App.3d [at p.

12

]822), it would be improper to take judicial notice that all adult male pit bulls are dangerous."].)[4]

Moreover, the fact a dog is kept behind fencing is also not evidence of actual knowledge of dangerous propensities. (*Nava v. McMillan* (1981) 123 Cal.App.3d 262, 267 ["The fact that [the dog] is fenced does not necessarily imply the dog is so unusually fearsome that liability is incurred by the owner to one frightened by such dog."].)

Turning to the alleged dangerous condition involving the gate or fence in the front yard, Khan offered evidence supporting Facts 35 to 37 that the Hickses had no notice that their dogs escaped the front yard, that they found no problems with the gate or fence, and that Khan was not aware the dogs were kept in an area that allowed them to escape. Johnson offered nothing to the contrary—and his claim fails.

The applicable rule is that: " ' " 'before liability may be thrust on a landlord for a third party's injury due to a dangerous condition on the land, the plaintiff must show that the landlord had actual knowledge of the dangerous condition in question, plus the right and ability to cure the condition.' " ' " (*Garcia, supra*, 242 Cal.App.4th at p. 604.)

Johnson's brief cites to only two cases that he claims support his position: *Curtis v. State of California ex rel. Dept. of Transportation* (1982) 128 Cal.App.3d 688 (*Curtis*) and *Davert v. Larson* (1985) 163 Cal.App.3d 407 (*Davert*). Neither is applicable.

---

[4]    At the hearing Johnson's attorney said he "love[s] pit bulls, personally" and that "I'm not here to condemn pit bulls, per se. But when you have three of any kind of large, strong dogs together, that can pose a menace to a neighborhood. And they need to be kept secure on one's property. [¶] I'm not here to say they shouldn't have dogs, that a person doesn't have a right to a dog."

Plaintiff Curtis was driving a truck when he saw another truck driven by Fagan swerving to avoid hitting a cow, to no avail, in fact hitting it. (*Curtis*, *supra*, 128 Cal.App.3d at p. 673.) Fagan pulled over, got out of his car, and then saw Curtis's truck also hit the cow and go over the shoulder. (*Id*. at pp. 673–674.) As pertinent here, the jury found against the State based on fencing along the freeway built by the State when the freeway was built, which was an improper way to fence cattle—and thus a dangerous condition at the time of the accident. (*Id*. at pp. 674–675.) As against the State, the jury found "the State of California had actual or *constructive* notice of the dangerous condition within a sufficient time prior to the accident so measures could have been taken to protect against the dangerous condition." (*Id*. at p. 675, italics added.)

*Curtis* concerns a theory of liability against the State which built the fence, while Johnson's claim here is a landlord's claimed liability for a tenant's improvement constructed during the tenancy, with different notice standards: constructive notice versus actual knowledge. Here, because this case involves a claim against a landlord whose tenant was in possession where the tenant (not the landlord) built the allegedly dangerous condition, the law thus requires *actual* notice and knowledge of the dangerous condition to impose liability upon the landlord. (*Garcia*, *supra*, 242 Cal.App.4th at p. 604; *St. John v. Schaeffler, supra,* at p. 1159.) The legal standard on constructive notice for dangerous conditions on public property involved in *Curtis* does not apply.

*Davert* is also inapplicable. There, plaintiffs were traveling in a car driven by Davert that collided with a horse alleged to have escaped from property whose owners included defendant who had a 1/2500th undivided interest in the property. (*Davert*, *supra*, 163 Cal.App.3d at p. 409.)

14

Defendant prevailed on summary judgment on the basis that he owed plaintiffs no duty of care because his interest in the property (1/2500) was small, and he exercised no control over the management of the property. (*Id.* at p. 410.) The Court of Appeal reversed, holding that tenants in common of real property who delegate the control and management of the property to a separate legal entity should not be immunized from liability to third parties for tortious conduct. (*Id.* at p. 412.)

Further, *Davert* involved an owner in possession (*Davert, supra,* 163 Cal.App.3d at p. 410), not, as here, a landlord out of possession of a rental premises, or the attenuated duty of care applicable to such a landlord not in possession where the tenant created the fence and gate in question.

In short, Johnson offered no evidence that Khan had any actual knowledge or notice of any dangerous condition involving the gate or fence in the front yard including of the dogs escaping through the gate or fence. "This lack of actual knowledge precludes the imposition of any duty during the tenancy." (*St. John v. Schaeffler, supra,* 109 Cal.App.5th at p. 1160.)

Johnson's fundamental contention seems to be that Khan and the trial court treated this case as "just a dog bite case," and ignored Johnson's allegation about the fence and gate. This position is described in various ways throughout his briefing, exemplified by this description in his reply brief:

"Respondent's motion and Respondent's Brief repeatedly define the claim as one based on lack of actual knowledge that the tenant's dog was dangerous. But Appellant alleged Respondent's own general negligence in connection with the front-yard fence and gate. The First Amended Complaint alleged that the dogs escaped because of negligent maintenance and design of the gate and fencing, that Respondent knew or should have known of the

15

dangerous condition created by confining multiple dogs behind that front-yard enclosure, and that pedestrians in the surrounding neighborhood were foreseeable victims.

"The record shows that Appellant preserved this exact issue below. In opposition, Appellant argued that Khan approved and inspected the front-yard fence and gate, that the gate did not automatically close or latch, that it was held shut by a string, and that these facts created triable issues regarding Khan's negligence and breach of duty. At oral argument, Appellant again explained that 'this is not a dog bite case' against Khan, but a negligence case based on the construction and maintenance of the fence and gate."

At a later point in his reply brief, Johnson asserts, in a bold-faced heading, that "The General Landlord-Duty Principles and the Dangerous-Dog Principles Are Distinct; Respondent Improperly Collapses Them," and goes on to argue:

"The Judicial Council's civil instructions reflect two distinct concepts. CACI No. 1013 concerns landlord liability for a dangerous dog kept on property and requires proof the landlord knew or must have known the dog had a dangerous nature or tendency. CACI No. 1006, by contrast, addresses a landlord's general duty regarding unsafe conditions on rental property . . . .

"Respondent's Brief treats CACI No. 1013 as if it absorbs every theory involving a dog. That is incorrect. Where the claim is that a dog with known vicious propensities injured someone, CACI No. 1013 supplies the framework. But where the claim is that the landlord negligently approved or failed to correct a defective property condition that allowed the animals to escape, CACI No. 1006 and ordinary premises-liability principles remain relevant. [¶] This distinction is critical. Appellant need not prove that Respondent

16

knew the dogs had previously bitten someone in order to show that Respondent negligently approved an inadequate containment system. The jury could find Respondent had actual knowledge of the unsafe condition from his own inspection and approval of the fence and gate, and from his later observation of dogs being kept behind it."

What Johnson fundamentally ignores is the interplay between the dogs and his allegation about the supposedly negligently designed gate and fence, and the significance of Khan's knowledge—more accurately, lack of knowledge—about any dangerous dog. The allegedly negligently designed gate would only have been dangerous because of the dogs. So, if Khan had no knowledge of the dangerous dogs, there would be nothing about the gate that would have made it dangerous. Put conversely, the gate was not dangerous by itself, but only if it failed to restrain dangerous dogs.

## DISPOSITION

The judgment is affirmed. Khan shall recover his costs on appeal.

_____

                    RICHMAN, ACTING P. J.

We concur.

_____

MILLER, J.

_____

DSAUTELS, J.

(A174093N)